UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS CHALUISAN, on behalf of
himself and all others similarly situated,

                        Plaintiffs,

       - against -

SIMSMETAL EAST LLC, MARK
SANTIAGO, and JOHN DOES 1-10,

                    Defendants.

**<u>MEMORANDUM OPINION &
ORDER</u>**

09 Civ. 1182 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

          In this putative class action, Plaintiff Carlos Chaluisan asserts claims

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 <u>et seq.</u>, and the New York

Labor Law, § 650 <u>et seq.</u>, on behalf of himself and all others similarly situated, for failure

to pay overtime compensation.  Plaintiff also asserts individual state law claims for

breach of contract and unjust enrichment relating to Defendants' alleged failure to pay

him vacation pay and a non-discretionary bonus.

          Defendants have moved to dismiss the individual claims pursuant to Fed.

R. Civ. P. 12(b)(1), contending that this Court should not exercise supplemental

jurisdiction over them, because they are not sufficiently related to Plaintiff's FLSA claim

for overtime pay.  Defendants have also moved, in the alternative, to dismiss Plaintiff's

claim for unjust enrichment pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the FLSA

preempts this claim.

          After the motion to dismiss was filed, Plaintiff stipulated to the dismissal

of the breach of contract and unjust enrichment claims as against Mark Santiago.  (Pltf.

Br. 5).  Accordingly, those claims will be dismissed.  For the reasons set forth below, Defendants' motion will otherwise be DENIED.

### BACKGROUND

Plaintiff Carlos Chaluisan was employed by Defendant Simsmetal East LLC from approximately January 19, 2004, until September 10, 2008, when he was terminated.  (Cmplt. ¶ 25)  Plaintiff began his employment with Simsmetal as a laborer, but was promoted to supervisor on June 1, 2006.  (Id. ¶ 27)

Defendant Simsmetal owns and operates scrap processing and recycling facilities in New York, and Defendant Mark Santiago is a principal of the Company.  (Id. ¶¶ 24, 10)

The events that form the basis for Plaintiff's complaint took place while Plaintiff served as a supervisor.  Plaintiff alleges that during this period – from June 1, 2006, until his termination on September 10, 2008 – Defendants failed to pay him overtime wages despite the fact that he routinely worked 55 to 60 hours per week.  (Id. ¶ 30)  Plaintiff alleges that during his first year as a supervisor, Defendant Santiago invariably recorded that Plaintiff had worked 40 hours during a five-day work week and 48 hours when he worked six days.  (Id. ¶ 31)  During his second year as a supervisor, Plaintiff's hours were recorded by computer, but Santiago nonetheless crossed out Plaintiff's actual hours and recorded his hours as "40" or "48" depending on whether Plaintiff had worked five or six days during that week.  (Id. ¶ 32)

While referred to as a "salaried" employee, Plaintiff received additional pay when he worked on Saturdays, but only in the form of "straight" pay rather than time and a half.  (Id. ¶ 34)  As a laborer, Plaintiff had received overtime pay for work on

Saturday, but once he was promoted to a supervisor position, he no longer received overtime pay.  (Id. ¶ 33)

Plaintiff contends that he and others similarly situated were placed in supervisor positions that required little skill and no capital investment, and that they were given duties and responsibilities that did not include bona fide executive functions such as the power to hire or fire, or to set shifts, hours or pay for those supervised.  (Id. ¶¶ 29, 38)  Accordingly, Plaintiff argues that he was entitled to overtime pay despite his supervisor title, and that Defendants' failure to pay him and others similarly situated overtime compensation violated the provisions of the FLSA, 29 U.S.C. § 201 et seq. and the New York Labor Law, § 650 et seq. (Counts I and II).  (Id. ¶¶ 42-53)  Defendants argue, however, that Plaintiff became an "exempt" employee under the FLSA and the Labor Law when he was promoted to the supervisor position.  (Ans. ¶ 33)

In addition to his FLSA and Labor Law claims, the Complaint asserts individual claims for breach of contract and unjust enrichment related to Defendants' refusal to pay (1) vested vacation pay; and (2) an automatic, non-discretionary 8% bonus that Plaintiff had been scheduled to receive at the time of his termination (Count III and IV). (Id. ¶¶ 36, 37, 54-63)

## DISCUSSION

### I.   THIS COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

#### A.   The Scope of Supplemental Jurisdiction

Defendants argue that Plaintiff's state law claims must be dismissed because they are not sufficiently related to his FLSA claims to justify this Court's exercise of supplemental jurisdiction.

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, plaintiff bears the burden of showing that subject matter jurisdiction exists.  See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

Title 28, U.S.C. § 1367 defines a federal court's supplemental jurisdiction as follows:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  "[D]isputes are part of the 'same case or controversy' within § 1367 when they 'derive from a common nucleus of operative fact.'"  Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (quoting Promisel v. First Am. Artificial Flowers Inc., 943 F.2d 251, 254 (2d Cir. 1991)); see also In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab., 613 F. Supp. 2d 437, 440-41 (S.D.N.Y. 2009) (quoting Achtman, 464 F.3d at 335) ("Federal and state claims form 'one case or controversy,' and thus satisfy section 1367(a), if they 'derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding.'").

Supplemental jurisdiction has thus been exercised "'where the facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court.'"

4

McConnell v. Costigan, No. 00 Civ. 4598 (SAS), 2000 WL 1716273, at *4 (S.D.N.Y.

Nov. 16, 2000) (alterations omitted) (quoting Lyndonville Sav. Bank & Trust Co. v.

Lussier, 211 F.3d 697, 704 (2d Cir. 2000)).  Conversely, supplemental jurisdiction should

not be exercised "when the federal and state claims rest[] on essentially unrelated facts."

Lyndonville Sav. Bank & Trust Co., 211 F.3d at 704.

> Under Section 1367(c), district courts may decline to exercise
> supplemental jurisdiction over a claim under subsection (a) if--
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over
> > which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original
> > jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for
> > declining jurisdiction.

28 U.S.C. § 1367(c).  "[W]here at least one of the subsection 1367(c) factors is

applicable, a district court should not decline to exercise supplemental jurisdiction unless

it also determines that doing so would not promote the values articulated in [United Mine

Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)]:  economy, convenience, fairness,

and comity."  Jones v. Ford Motor Credit Co., 358 F.3d 205, 214 (2d Cir. 2004).

**B.     Plaintiff's State Common Law and FLSA Claims
        Arise From a Common Nucleus of Operative Fact**

Defendants argue that Plaintiff's breach of contract and unjust enrichment

claims are wholly unrelated to his FLSA claim for overtime pay and do not derive from a

common nucleus of operative fact.  (Def. Br. 1)  According to Defendants, "[t]he facts

relevant to [Plaintiff's] claim for unpaid overtime are entirely unrelated to the facts

relevant to his claim that he was owed a bonus and that he was not paid for his vacation time after his termination."  (Def. Br. 5)  Defendants argue that the only connection between Plaintiff's common law claims and his FLSA claim is the employment relationship between himself and Defendants, and that this relationship "is insufficient to render the claims related enough for this Court to exercise supplemental jurisdiction. . . ." (Def. Br. 4)

Plaintiff argues, however, that his common law claims share a common nucleus of operative fact with the FLSA claim because "all claims in the complaint relate to Defendants' compensation practices" and the "same evidence – personnel files, time sheets, pay stubs, terms of employment, etc. – will apply in each case, and the same witnesses – plaintiff, his supervisors, perhaps his co-workers – will likely be deposed or called to testify in each case."  (Pltf. Br. 2)

Resolution of Defendants' argument that Plaintiff was "employed in a bona fide executive . . . capacity" under 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.1 – and therefore was an exempt employee for overtime compensation purposes[1] – will require a fact intensive inquiry concerning Plaintiff's duties and compensation.  See Connolly v. Smugglers' Notch Mgmt. Co., No. 09 Civ. 131 (WKS), 2009 U.S. Dist. LEXIS 104991, at * 11 (D. Vt. Nov. 5, 2009) ("[T]o demonstrate that [plaintiff] was exempt from overtime . . . is determined through a two-pronged test of the employee's salary and duties . . .[which] will necessitate inquiry into the legal and factual issues of plaintiff's duties and compensation. . . ." (citing Reich v. Waldbaum, Inc., 52 F.3d 35, 39

---

[1]  FLSA implementing regulations provide for "an exemption from the Act's minimum wage and overtime requirements for any employee employed in a bona fide executive, administrative, or professional capacity. . . ."  29 C.F.R. § 541.0(a).

(2d Cir. 1995) ("The regulations pertinent to the resolution of this issue . . . specify a 'duties' and a 'salary' test, both of which must be satisfied to qualify for the 'bona fide executive' exemption."))).

Defendants will be required to demonstrate, <u>inter alia</u>, that Plaintiff's "primary duty is management of the enterprise"; that he "regularly direct[ed] the work of two or more other employees"; that he had the authority to hire or fire, or that his suggestions in this regard were "given particular weight"; and that he was "[c]ompensated on a salary basis at a rate of not less than $455 per week."  29 C.F.R. § 541.100; <u>see</u> <u>also</u> <u>Reich</u>, 52 F.3d at 38.

With respect to whether Plaintiff was compensated on a salary basis, Defendants will have to demonstrate that

> [Plaintiff] regularly receive[d] each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of [his] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . . [A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

Resolution of Plaintiff's FLSA claim will thus require a searching examination of the circumstances of his employment, including his duties and managerial responsibilities, and his compensation.  Documentary evidence and testimony from Plaintiff's co-workers and supervisors regarding these matters will be necessary.

Plaintiff's state common law claims concerning Defendants' alleged failure to pay him his vested vacation pay and bonus will require consideration of similar evidence.  The terms of Plaintiff's employment agreement with Defendants will have to

be analyzed.  Moreover, because Plaintiff's right to vested vacation pay and bonus

appears to be related to the number of days/hours he worked,[2] the number of vacation

days he was entitled to, and the number of vacation days he used before his termination,

consideration of these claims will require examination of the same employment records

called for by his FLSA claim.  See Connolly, 2009 U.S. Dist. LEXIS 104991, at * 11;

Patel v. Baluchi's Indian Rest., No. 08 Civ. 9985 (RJS), 2009 U.S. Dist. LEXIS 66512, at

*19 (S.D.N.Y. July 30, 2009) ("[I]n order to evaluate [plaintiff's] FLSA claims, the

parties will necessarily partake in discovery determining [plaintiff's] job title, hours, and

wages.").

          Resolution of Plaintiff's state and federal claims is also likely to require

testimony from the same witnesses.  Defendants' managers will likely be called to testify

concerning their refusal to pay Plaintiff his vested vacation pay and bonus.  Supervisors

and co-workers will likely be examined concerning the terms of Plaintiff's employment

agreement.  With respect to Plaintiff's FLSA claim, these same witnesses will

undoubtedly be called to testify concerning the nature of Plaintiff's duties and how he

was compensated.

          The fact that Plaintiff's FLSA and state common law claims will involve

similar witnesses and evidence provides a strong rationale for exercising supplemental

jurisdiction over Plaintiff's state common law claims.  See, e.g., Connolly, 2009 U.S.

_____

[2]  The Complaint alleges that Defendants "refused to pay [Plaintiff] for his vested
vacation time he had earned."  (Cmplt. ¶ 36)  It is reasonable to infer that Plaintiff's
alleged right to vacation pay had vested as a result of the hours/days he had worked prior
to his termination.  Similarly, Plaintiff alleges that Defendants refused to pay him "an
automatic, non-discretionary 8% bonus" that he was scheduled to receive from
defendants at the time of his termination.  Id. at ¶ 37.  Once again, qualification for the
bonus appears to have been based on Plaintiff's mere employment by Defendants, rather
than on the attainment of a goal unrelated to hours or days worked.

Dist. LEXIS 104991, at *10 (holding that court had supplemental jurisdiction over Plaintiff's state law claims because "adjudication of the state law claims is apt to 'require many of the same witnesses, much of the same evidence, and determination of many of the same facts'") (quoting Luongo v. Nationwide Mut. Ins. Co., No. 95 Civ. 3190 (MBM), 1996 WL 445365, at *5 (S.D.N.Y. Aug. 7, 1996))); Rivera v. Ndola Pharm. Corp., 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007) ("Typically, supplemental jurisdiction is appropriate for claims during the employment relationship because those claims arise from the same underlying factual basis.").  When similar evidence and witnesses will be required to adjudicate state and federal claims, principles of judicial economy dictate that "trying the state law claims in state court and the FLSA claim in federal court would require duplication of efforts and . . . would be a waste of judicial resources. . . ." Connolly, 2009 U.S. Dist. LEXIS 104991, at *13-14 (quotation omitted).

Recent decisions from district courts in this Circuit support Plaintiff's argument that this Court should exercise supplemental jurisdiction over his state common law claims.

In Patel v. Baluchi's Indian Rest., No. 08 Civ. 9985 (RJS), 2009 U.S. Dist. LEXIS 66512 (S.D.N.Y. July 30, 2009), plaintiffs in a putative class action asserted, inter alia, claims for overtime compensation under the FLSA, and claims for breach of contract and unjust enrichment under state law.  Id. at *3.  Defendants moved to dismiss plaintiffs' state common law claims, arguing that they fell outside the court's proper exercise of supplemental jurisdiction.  Id. at *12, *18.  The court denied the motion, however, finding that the FLSA and state common law claims derived from a common nucleus of operative fact:

>The Court finds that . . . supplemental jurisdiction under 28 U.S.C. § 1367(a) exists.  Plaintiffs allege, inter alia that, "[i]n 2004, Defendant Aggarwal provided Plaintiff Patel with a letter of employment promising him a managerial position at Baluchi's with a salary of $44,000, based on a 40 hour work week, 52 weeks per year." (AC P 110.)  Plaintiffs further allege that, in breach of this contract, Plaintiff Patel worked seventy-two hours per week at a "flat rate of $ 450 per week until 2006, and a flat rate of $ 600 per week from 2006 to 2008," and that "in reality, Plaintiff Patel had no managerial authority." (Id. PP 111-12.)  Accordingly, in order to evaluate Patel's FLSA claims, the parties will necessarily partake in discovery determining Patel's job title, hours, and wages.  This evidence is similarly at the heart of Patel's breach of contract claim, which alleges that Patel worked more hours for less money than provided for by the terms of his contract with Defendants.  In short, Plaintiffs' federal claims "'necessarily bring [] the facts underlying the state claim before the court.'"

Patel, 2009 U.S. Dist. LEXIS 66512, at *19-20 (quoting McConnell, 2000 WL 1716273, at *4 (quoting Lyndonville Sav. Bank & Trust Co., 211 F.3d at 704)).  Here, as in Patel, analysis of Plaintiff's FLSA claim will require a thorough analysis of the terms and conditions of his employment, including all aspects of his compensation package.  Analysis of the hours and days Plaintiff worked is integral to both sets of claims, because overtime pay, vacation pay, and bonus are all commonly dependent on the number of hours or days worked.

Similarly, in Connolly v. Smugglers' Notch Mgmt., plaintiff asserted a claim under the FLSA for overtime pay and state law claims for breach of contract and violation of the Vermont Fair Employment Practices Act, Vt. Stat. Ann. Tit. 21, §§ 495-496.  See Connolly, 2009 U.S. Dist. LEXIS 104991, at *1-2.  The court determined that exercising supplemental jurisdiction over plaintiff's state law claims was appropriate, because adjudication of the FLSA and state law claims would require similar witnesses and evidence and "necessitate inquiry into legal and factual issues of plaintiff's duties and compensation."  Connolly, 2009 U.S. Dist. LEXIS 104991, at *10-*11.

Defendants rely on three cases – <u>Lyon v. Whisman</u>, 45 F.3d 758 (3d Cir. 1995); <u>Rivera v. Ndola Pharmacy Corp.</u>, 497 F. Supp. 2d 381 (E.D.N.Y. 2007); and <u>Torres v. Gristede's Operation Corp.</u>, 628 F. Supp. 2d 447 (S.D.N.Y. 2008) – in arguing that this Court should not exercise supplemental jurisdiction over Plaintiff's state common law claims.  None of these cases is on point, however.

In <u>Lyon</u>, plaintiff sued an accounting firm and its president claiming that they had failed to pay her overtime wages as required by the FLSA.  Plaintiff also brought state law contract and tort claims relating to defendants' failure to pay her a bonus on time and in full.  In the tort claim, Plaintiff alleged that defendants had threatened to withhold Plaintiff's vested bonus if she left their employment.  <u>Lyon</u>, 45 F.3d at 759.  Plaintiff prevailed at trial, but the Third Circuit reversed, finding that the state law claims and FLSA claim were not derived from a common nucleus of operative fact, and that the district court had erred in exercising supplemental jurisdiction over the state law claims.  <u>Id.</u> at 763.  The court determined that "the only link between [plaintiff's] FLSA and state law claims is the general employer-employee relationship between the parties," and that the exercise of supplemental jurisdiction under these circumstances was improper:

> [Plaintiff's] FLSA claim involved very narrow, well-defined factual issues about hours worked during particular weeks [while] [t]he facts relevant to her state law contract and tort claims, which involved [defendant's] alleged underpayment of a bonus and its refusal to pay the bonus if [plaintiff] started looking for another job, were quite distinct.

<u>Id.</u> at 762.

<u>Lyon</u> is distinguishable from the instant case on several grounds.  As an initial matter, Lyon's FLSA claim did not require any examination of Lyon's duties or

the nature of her compensation.  As the Third Circuit stated, all that was necessary was to determine how many "hours [Lyon] had worked during particular weeks."  Id.  There was no issue as to whether Lyon was an exempt employee.  Here, in contrast, the complaint pleads that Defendants stopped paying Plaintiff overtime wages when he was promoted to supervisor (Cmplt., ¶¶ 33-35), and it is apparent – as discussed above – that a thorough analysis of Plaintiff's duties and compensation package will be necessary to resolve his FLSA claims.  No such analysis was necessary in Lyon.  Because such an analysis will be necessary here, there is far more evidentiary overlap between Plaintiff's FLSA claims and his state common law claims, and it can be fairly said that "presentation of the federal claim [will] necessarily bring[] the facts underlying the state claim[s] before the court." McConnell, 2000 WL 1716273, at *4.

Lyon's tort and contract claims also raised issues far afield from her FLSA claim.  For example, Lyon's claims that defendants (1) committed tortious conduct in threatening to withhold her bonus if she did not remain in their  employ; and (2) paid her less than the bonus they promised, required evidence that was completely unrelated to the sole issue raised by her FLSA claim – i.e., the number of hours she worked in a given week.

Defendants' reliance on Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381 (E.D.N.Y. 2007), is likewise misplaced.  In Rivera, the plaintiff worked in defendants' pharmacy.  She alleged that defendants violated the FLSA by failing to pay her overtime, and had also sexually harassed her, in violation of the New York State and New York City human rights laws.  In connection with the sexual harassment, Plaintiff also asserted common law claims of battery, intentional and negligent infliction of

emotional distress, and negligent retention and supervision.  Defendants argued that all of the state law claims should be dismissed because they did "not share a common nucleus of facts with the federal overtime claim."  <u>Rivera</u>, 497 F. Supp. 2d at 392.

The court, however, decided to exercise supplemental jurisdiction over the sexual harassment claims against one defendant, because he had agreed to "increase[] [plaintiff's] wages as a result of her agreement to be his 'friend' and accompany him to breakfast and lunch."  <u>Id.</u> at 393.  After this defendant learned that the plaintiff had a boyfriend, he reduced her wages and made her a part-time employee.  <u>Id.</u>

Based on this record, the court concluded that the exercise of supplemental jurisdiction was appropriate:

> Plaintiff's allegations of sexual harassment against N. Patel are closely related to her wages during her employment, and as such, arise from a "common nucleus of operative fact" as her FLSA overtime claim.

<u>Id.</u>  In reaching this result, the court noted that "[t]ypically supplemental jurisdiction is appropriate for claims during the employment relationship because those claims arise from the same underlying factual period."  <u>Id.</u> at *393 (citing <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 723 (2d Cir. 2002) (exercise of supplemental jurisdiction was proper where plaintiff's state and federal claims arose "out of approximately the same set of events"); <u>Promisel v. First Am. Artificial Flowers</u>, 943 F.2d 251, 254 (2d. Cir 1991) (exercising supplemental jurisdiction where plaintiff's federal ADEA claim and state law claims were based on plaintiff's termination)).

The <u>Rivera</u> court dismissed plaintiff's remaining sexual harassment-related state law claims, however, because they were based on conduct that took place "after plaintiff stopped working overtime and involve both different rights and underlying

13

facts than plaintiff's overtime claims." <u>Id</u>. at 395.  The court determined that exercising supplemental jurisdiction over these claims was not appropriate, given that "the only factual link between plaintiff's claims . . . and the FLSA overtime claim is that the underlying events occurred during the course of plaintiff's employment by [defendants]." <u>Rivera</u>, 497 F. Supp. 2d at 393.

Nothing in <u>Rivera</u> suggests that dismissal would be appropriate here. Indeed, to the extent that <u>Rivera</u> acknowledges that supplemental jurisdiction should generally be exercised over state law claims that arise from the same time period as an FLSA claim, <u>Rivera</u> supports Plaintiff's position.[3]  In any event, for the reasons stated above, Plaintiff's state common law claims and FLSA claim are much more intertwined than the FLSA claim and dismissed sexual harassment claims at issue in <u>Rivera</u>.

Finally, <u>Torres v. Gristede's Operation Corp.</u>, 628 F. Supp. 2d 447 (S.D.N.Y. 2008), is inapposite.  In <u>Torres</u>, plaintiffs sued for overtime wages under the FLSA and defendant brought permissive faithless-servant counterclaims under state law. The counterclaims were based on plaintiffs' "purported misconduct in the course of their employment . . . [including that one plaintiff had] sexually harassed coworkers and falsified information on his employment application [and that another plaintiff had] misuse[d] . . . a customer credit card." <u>Id.</u> at 466.  The court refused to exercise supplemental jurisdiction over these permissive counterclaims because "none of the events alleged in [defendant's] state law faithless servant claims are relevant to Plaintiffs'

---

[3]  Defendants argue that Plaintiff's state law claims are temporally distinct because Plaintiff was only refused his bonus and vacation pay "after his employment ended." (Def. Br. at 4)  This argument is unavailing.  Plaintiff alleges that the bonus and vested vacation compensation were promised to him <u>during</u> his employment and that his right to this compensation accrued <u>during</u> his employment.  (Cmplt. ¶¶ 36-37, 55)

overtime claims." Id. at 468. The court determined that "the only possible connection between the parties' claims is that they both arise out of Individual Plaintiffs' employment," and ruled that the employment relationship alone was not sufficient to demonstrate that the FLSA claims and the faithless-servant claims arose from a common nucleus of operative fact. Id.

Torres is easily distinguished from the instant action. The state law counterclaims in Torres related to distinct incidents involving individual plaintiffs that were completely unrelated to defendant's compensation practices. See id. ("[N]one of the events alleged in [Defendant's] state law . . . claims are relevant to Plaintiffs' overtime claims."). Here, Plaintiff's state law claims will require reference to many of the same witnesses and much of the same documentary evidence as the FLSA claim.

Because Plaintiff's state common law claims and FLSA claim are "'derive[d] from a common nucleus of operative fact,'" Achtman, 464 F.3d at 335 (quoting Promisel, 943 F.2d at 254), and because none of the 28 U.S.C. § 1367(c) factors are present, this Court will exercise supplemental jurisdiction over Plaintiff's state common law claims pursuant to 28 U.S.C. § 1367.

## II.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM WILL NOT BE DISMISSED AT THIS TIME

Defendants argue, in the alternative, that "to the extent that Plaintiff bases his unjust enrichment claim on unpaid overtime, the FLSA preempts such claim." (Def. Br. 6)[4]  Plaintiff's opposition brief does not address this issue.

---

[4]  Defendants do not contend that the FLSA preempts Plaintiff's vacation pay and bonus claims. (Def. Br. 6 n.2)

There is case law support for the proposition that while a plaintiff cannot obtain a double recovery under the FLSA and state unjust enrichment law, there is no bar to pleading both claims simultaneously.  In <u>Davis v. Lenox Hill Hosp.</u>, No. 03 Civ. 3746 (DLC), 2004 U.S. Dist. LEXIS 17284 (S.D.N.Y. Aug. 31, 2004), for example, defendants moved to dismiss the plaintiff's state law unjust enrichment claim, arguing that the "unjust enrichment claim is preempted by the FLSA."  <u>Davis</u>, 2004 U.S. Dist. LEXIS 17284, at *25.  The court denied the motion:

> The defendants mistakenly contend that Davis cannot simultaneously assert claims for unjust enrichment and violation of the FLSA. . . . Insofar as the defendants' argument is about overtime compensation, they correctly note that Davis cannot recover under both federal and state law for the enforcement of the same right.  At the pleading stage, however, parties are entitled to plead causes of action under both state and federal law to vindicate the same right unless the federal law preempts the state claim.  The FLSA does not preempt state law in the area of overtime compensation.  <u>See</u> <u>Overnite Transp. Co. v. Tianti</u>, 926 F.2d 220, 222 (2d Cir. 1991) (citing 29 U.S.C. § 218(a)).  If Davis prevails at trial on both her FLSA and unjust enrichment claim, she will be limited to the remedy provided by the FLSA for the violation of its overtime compensation requirements.  At the pleading stage, however, she is free to pursue her claim under both state and federal law.

<u>Davis</u>, 2004 U.S. Dist. LEXIS 17284, at *27-28.

In rejecting the argument that the FLSA preempts state law unjust enrichment claims, the <u>Davis</u> court relied on <u>Overnite Transp. Co. v. Tianti</u>, 926 F.2d 220 (2d Cir. 1991), in which the Second Circuit held that states are not preempted from regulating overtime wages:

> Congress' intent to allow state regulation to coexist with the federal scheme can be found in § 18(a) of the FLSA, which explicitly permits states to mandate greater overtime benefits.  <u>See</u> 29 U.S.C. § 218(a).  We also note that every Circuit that has considered the issue has reached the same conclusion -- state overtime wage law is not preempted by . . . the FLSA.

Overnite Transportation Co., 926 F.2d at 222 (citations omitted).

Courts in this Circuit routinely rely on Overnite Transportation for the proposition that the FLSA does not preempt state regulation of overtime wages.  See Cohen v. Gerson Lehrman Group, Inc., No. 09 Civ. 4352 (PKC), 2010 U.S. Dist. LEXIS 1666. at *12 (S.D.N.Y. Jan. 6, 2010) ("Overnite Transportation continues to be followed by courts in this District confronting FLSA preemption arguments. . . . [Defendant] sets forth no basis to depart from Overnite Transportation and its progeny."); Segal v. Varonis Systems, Inc., 601 F. Supp. 2d 551, 554 (S.D.N.Y. 2009) ("'It is settled in the Second Circuit that FLSA does not preempt state wage and hour laws.'" (quoting Guzman v. VLM Inc., No. 07 Civ. 1126 (JG), 2008 WL 597186, at *10 (S.D.N.Y. Mar. 2, 2008))).

A decision that the FLSA does not preempt state regulation of overtime wages does not necessarily indicate, however, that state common law claims are not preempted, and the Second Circuit has not directly addressed that issue.  Patel, 2009 U.S. Dist. LEXIS 66512, at *25; Lopez, 2008 WL 203038, at *5 ("The Second Circuit Court of Appeals has not indicated whether state common-law claims such as those being asserted here are preempted by the FLSA.")

In Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007), however, the Fourth Circuit concluded that the FLSA preempted the state law contract, negligence, and fraud claims alleged in that case, which were based solely on alleged FLSA violations[5]:

---

[5]  The Court noted that plaintiffs "do not contend . . . that any North Carolina law entitles them to unpaid wages.  Rather . . . they rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations."  Anderson, 508 F.3d at 193.

> we . . . hold today that Congress prescribed exclusive remedies in the
> FLSA for violations of its mandates. . . . Because the FLSA's enforcement
> scheme is an exclusive one, we further conclude that the Class Members'
> FLSA-based contract, negligence and fraud claims are precluded under a
> theory of obstacle preemption.

Anderson, 508 F.3d at 194 (citations omitted) (emphasis added).  At least one court in

this Circuit has followed Anderson.  See Lopez v. Flight Serv. & Sys., Inc., No. 07 Civ.

6186 (CJS), 2008 WL 203028, at *7 (W.D.N.Y. Jan. 23, 2008) (granting motion to

dismiss unjust enrichment and other state law claims because they "pertain to

Defendants' alleged failure to pay Plaintiffs in accordance with the FLSA . . . [and] are

preempted by the FLSA").

>        Here, it is not clear from the Complaint (or from Plaintiff's opposition

brief) whether Plaintiff's unjust enrichment claim is based solely on an alleged FLSA

violation, or whether it has an independent basis.  In pertinent part, the unjust enrichment

claim (Count IV of the Complaint) reads as follows:

> 60.  Plaintiff conferred the benefit of his services on the Defendants with
> the understanding and expectation that he would be compensated for
> their [sic] services.

> 61.  Defendants have intentionally failed and refused to fully compensate
> Plaintiff for his services.

> 62.  As a result, Defendants have been unjustly enriched at the expense of
> Plaintiff.

> 63.  As a direct and proximate result, Plaintiff has been damaged and is
> entitled to recover from Defendants the amount of his unpaid
> compensation.

(Cmplt., ¶¶ 60-63)[6]

---

[6]  It is likewise not apparent from the Complaint whether Plaintiff's unjust enrichment
claim is based solely on his vacation pay and bonus claims – which Defendants do not
challenge on this part of their motion – or extends to Plaintiff's claim for overtime
compensation.

Given this uncertainty, and the unsettled nature of the law,[7] see Chen v. Street Beat Sportswear, Inc., 364 F. Supp. 2d 269, 292 (E.D.N.Y. 2005) ("The law is unsettled as to whether the FLSA preempts state common law claims."), this Court will not dismiss Plaintiff's unjust enrichment claim at this time.  Discovery will reveal whether this claim seeks overtime compensation and whether it is duplicative of Plaintiff's FLSA claim for overtime compensation.  If so, Defendants will be free to renew their motion at summary judgment.  See, e.g., Roble v. Celestica Corp., Civil No. 06-2934 (JRT/FLN), 2006 U.S. Dist. LEXIS 94067, at *8 (D. Minn. Dec. 29, 2006) (denying motion to dismiss breach of contract, unjust enrichment, and quantum meruit claims on FLSA preemption grounds; "[w]hile additional discovery may reveal that plaintiffs' common law claims are in fact duplicative of the statutory claims, the Court cannot conclude at this stage of the proceedings that the underlying common law claims are preempted by the FLSA").

---

[7] Compare Anderson, 508 F.3d at 194 ("[W]e . . . conclude that the Class Members' FLSA-based contract, negligence and fraud claims are precluded under a theory of obstacle preemption."); Johnson v. Davis Security, Inc., 217 F. Supp. 2d 1224, 1227 (D. Utah 2002) (dismissing common law claims for, inter alia, conversion, unjust enrichment, fraud, negligent misrepresentation, gross negligence, breach of contract, and breach of fiduciary duty because the "common law claims are based on the same facts and circumstances as [the] FLSA claims"); Petras v. Johnson, No. 92 Civ. 8298 (CSH), 1993 WL 228014, at *4 (S.D.N.Y. Jun. 22, 1993) ("Because defendants' alleged fraud consists of the intentional frustration of the FLSA overtime rules, for which the FLSA provides a remedy in the form of liquidated damages . . . plaintiff's claim for punitive damages based on fraud is dismissed."); Nettles v. Techplan Corp., 704 F. Supp. 95, 100 (D.S.C. 1988) (holding that plaintiff's common law negligence claims were preempted by the FLSA); with Avery v. City of Talladega, 24 F.3d 1337, 1348 (11th Cir. 1994) (allowing claim for breach of contract coterminous with FLSA claim to survive "as an alternative legal theory"); Davis, 2004 U.S. Dist. LEXIS 17284, at *27-28 (holding that FLSA did not preempt unjust enrichment claim and noting that "parties are entitled to plead causes of action under both state and federal law to vindicate the same right"); Paukstis v. Kenwood Golf & Country Club, Inc., 241 F. Supp. 2d 551, 559-60 (D. Md. 2003) (concluding that state negligence claim did "not necessarily conflict with the purpose of the FLSA's remedial scheme" and denying motion to dismiss).

## **CONCLUSION**

Counts III and IV of the Complaint are dismissed as against Defendant

Mark Santiago.  Defendants' motion to dismiss is otherwise DENIED.  The Clerk of the

Court is directed to terminate the motion.  [Docket No. 6]

Dated: New York, New York
       March 23, 2010

SO ORDERED.

_Paul P. Gardephe_

Paul G. Gardephe
United States District Judge